UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BETSY FIGUEROA,

                Plaintiff,

  -against-                                  1:16-CV-0893 (LEK/TWD)

HSBC BANK USA, N.A., *et al.*,

                Defendants.

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Pro se plaintiff Betsy Figueroa sued Defendants HSBC Bank USA, N.A., PHH Mortgage, and Mortgage Electronic Registration Systems, Inc. ("MERS"), alleging several violations of federal law and a state-law fraud claim, all stemming from a mortgage on Figueroa's home. Dkt. No. 1 ("Complaint") ¶¶ 1–2, 15–18, 37–83. Defendants responded to the Complaint by moving to dismiss, both for lack of subject matter jurisdiction and for failure to state a claim. Dkt. Nos. 9 ("HSBC Motion"),[1] 20 ("PHH Motion");[2] see also Dkt. Nos. 9-10 ("HSBC Memorandum"), 22 ("PHH Memorandum"). Figueroa did not respond to the motions. Docket; see also Dkt. Nos. 25, 27 (collectively, the "Letter Motions") (requesting dismissal of this case due to Figueroa's failure

---

[1] A single motion was filed on behalf of both HSBC and MERS, who are represented by the same counsel in this case. HSBC Mot.

[2] PHH's Motion is actually an amended version of its original motion to dismiss. Dkt. No. 15. The differences appear to come from a factual mistake made by PHH in its original supporting affidavit. Compare Dkt. No. 16, ¶ 2 ("[T]he letter was demonstrably never sent to PHH."), with Dkt. No. 21, ¶ 2 ("[T]he letter was demonstrably never sent to the proper address designated by PHH . . . ."). Because Figueroa has failed to respond or object in any way, and because this change has no impact on the resolution of these motions, the Court will consider the amended motion.

to respond). For the following reasons, Defendants' motions are granted and Figueroa's Complaint is dismissed, but she may move to amend her Complaint in accordance with this Memorandum-Decision and Order.

II.     **BACKGROUND**

Figueroa's Complaint concerns a parcel of property located in Albany, New York. Compl. ¶¶ 1–2. In 2006, Figueroa took out a mortgage on the property from HSBC (or more specifically, its predecessor, HSBC Mortgage Corporation). Id. ¶¶ 15, 18. In 2013, HSBC initiated foreclosure proceedings against Figueroa in New York state court, which granted summary judgment for HSBC. Id. ¶¶ 19–20.[3] According to Figueroa, this foreclosure action was "faulty," id. ¶ 19, presumably because of Defendants' improper behavior, see, e.g., id. ¶¶ 73–74 ("Defendant HSBC made a false representation . . . . Plaintiff was never notified of a change in the Loan, and operated under the premise . . . that her Loan and Mortgage remained vested within HSBC and would not be subject to a PHH serving agreement.").

On July 20, 2016, Figueroa filed her Complaint in this Court. Compl. While she claims federal jurisdiction due to diversity of citizenship, id. ¶ 11 (citing 28 U.S.C. § 1332),[4] it is clear from the face of the Complaint that federal question jurisdiction exists in this case, see id.

---

[3] HSBC notes in its brief that the state court actually granted default judgment against Figueroa, HSBC Mem. at 6; Dkt. No. 9-9 ("Exhibit D"), but this distinction has no bearing on Defendants' motions.

[4] Figueroa's allegations concerning the diversity citizenship of defendants reflect some confusion about the tests for determining the citizenships of national banking associations and corporations. Compl. ¶¶ 3–10; see 28 U.S.C. §§ 1332(c)(1), 1348 (defining citizenship rules for corporations and national banks); Hertz Corp. v. Friend, 559 U.S. 77, 92–93 (2010) (interpreting the rule for corporations); Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006) (interpreting the rule for national banks).

¶¶ 37–64 (alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Figueroa's first claim is that HSBC violated TILA by failing to disclose information concerning her mortgage. Compl. ¶¶ 37–42. According to Figueroa, HSBC "failed to include and disclose certain charges" in its disclosures, id. ¶ 37, causing the settlement statement to "list[] [an] amount financed which is different from the sum listed in the original Note," id. ¶ 38. Figueroa also claims that the loan's annual percentage rate (or APR) was "based upon improperly calculated and disclosed amounts." Id. ¶ 39. As a consequence, Figueroa claims a violation of TILA and its implementing regulation, and seeks both damages from HSBC and the rescission of her mortgage transaction. Id. ¶ 40; id. at 12. Also, because Figueroa first learned of these issues in February 2016, she claims that "[a]ny applicable statute of limitations should run from this date." Id. ¶ 42.

Figueroa's second claim accuses PHH of violating RESPA, both concerning the amount it charged her in connection with the origination of her mortgage, and for failing to respond to a qualified written request ("QWR") for information concerning her loan. Id. ¶¶ 44, 47–48. As to the first issue, Figueroa alleges that "PHH accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed," which in turn entitles her to treble damages. Id. ¶¶ 44–45 (citing 12 U.S.C. § 2607(d)(2)). On the second issue, Figueroa claims she "submitted a timely Qualified Written Request" to PHH—the servicer of her loan—"on or about March 31, 2016." Id. ¶ 47. The QWR was not acknowledged within the time

3

permitted by law, id. ¶¶ 48–50, entitling Figueroa to actual damages, statutory damages, and other recovery, id. ¶¶ 51, 56–58. Figueroa also claims that the statute of limitations should run only from April 2016, the date she "first learned of the actions of Defendants." Id. ¶ 64. The Complaint, however, does not include any further details about the QWR or any allegations concerning PHH's broader QWR practices. Id. ¶¶ 43–64.

Finally, Figueroa alleges a state law claim for fraudulent misrepresentation against all Defendants. Id. ¶¶ 65–83. Reading the Complaint liberally, it seems to allege a fraud based on HSBC's failure to disclose that the loan would be serviced by PHH. Id. ¶¶ 73–74. As a consequence, Figueroa "was never notified of a change in the Loan," and was accordingly forced "to make payments to a non-party to the Mortgage." Id. ¶ 77. Though the connection is unclear, Figueroa alleges that this fraud led to the "entry of judgment . . . against her in the State Court proceedings," in turn causing the imminent loss of her home. Id. ¶ 78. She also "was further harmed in having to defend the State Court action," including legal and other costs. Id. ¶ 80.

Before the Court now are Defendants' motions to dismiss. HSBC Mot.; PHH Mot. Both motions argue that Figueroa's claims (or at least some of them) are barred by the Rooker-Feldman doctrine, which prohibits state-court losers from challenging the judgments against them in federal court. HSBC Mem. at 4–7; PHH Mem. at 5–7. Both also argue that Figueroa's claims are time barred or that her Complaint otherwise fails to state a claim under Rule 12(b)(6). HSBC Mem. at 11–19; PHH Mem. at 8–15. HSBC further argues that Figueroa's claims are barred by claim preclusion from the state-court foreclosure action, as well as by her execution of a modification to her loan. HSBC Mem. at 7–10.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. E.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party asserting subject matter jurisdiction carries the burden of proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004).

### B. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. The Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is a narrow exception to the normal subject-matter jurisdiction of federal district courts. Named after the two Supreme Court cases that applied the principle, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the doctrine prohibits losers in a state-court lawsuit from bringing a new action in federal court complaining of injuries caused by the state-court judgment itself, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 291–92 (2005). Rooker-Feldman recognizes that district courts are courts of original jurisdiction, but a challenge to a state-court judgment is effectively an appeal, which only the Supreme Court has appellate jurisdiction over within the federal system. E.g., id. at 292; Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83–84 (2d Cir. 2005) (citing Rooker, 263 U.S. at 416).

Because Rooker-Feldman is a narrow exception, there are four requirements that must be met before jurisdiction is divested from the district court.

6

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

Hoblock, 422 F.3d at 85 (alterations in original) (footnote omitted) (quoting Exxon, 544 U.S. at 284).

Figueroa's theory of the claim is that she "was severely damage[d] by having an entry of judgment entered against her in the State Court proceedings." Compl. ¶ 78. At first glance, this seems to fit within the confines of the Rooker-Feldman doctrine. After all, Figueroa clearly is complaining of injuries caused by the state-court judgment. But the Second Circuit has held that "[t]he Rooker-Feldman doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment." Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co., 664 F. App'x 20, 21 (2d Cir. 2016) (per curiam) (citing Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427–28 (2d Cir. 2014)). While a lawsuit seeking to vacate or otherwise undo a state-court foreclosure judgment—even one predicated on fraud—would be prohibited by Rooker-Feldman, see, e.g., Russo v. GMAC Mortg., LLC, 549 F. App'x 8, 10 (2d Cir. 2013) (applying Rooker-Feldman where the plaintiff sought "a court order prohibiting [the mortgagee] from taking possession of, or foreclosing on, [the mortgagor's] property"); Dunn v. Deutsche Bank Nat'l Tr. Co., No. 11-CV-712, 2011 WL 4809954, at *1 (N.D.N.Y. Oct. 11, 2011) (Kahn, J.) (applying the doctrine when the mortgagor

7

sought an injunction barring foreclosure and eviction, and vacating the state-court judgment, because the apparent mortgagee "lacked standing to bring a foreclosure action . . . in New York state court"), the Second Circuit has distinguished cases in which separate monetary damages are sought, even if they stem from the state-court judgment, Worthy-Pugh, 664 F. App'x at 21. Since Figueroa's requested relief falls into the second of these categories, the Court has subject matter jurisdiction over Figueroa's claims.

### B. The Fraudulent Misrepresentation Claim

While HSBC also argues that Figueroa's fraudulent misrepresentation claim should be dismissed under the doctrine of claim preclusion, HSBC Mem. at 7–9, the Court does not need to reach this issue. This is because, even if Figueroa's claim isn't barred by the state-court foreclosure judgment, she has still failed to state a claim for which relief may be granted.

Under New York law, a plaintiff must show five elements to prevail on a claim for fraud: "(1) a material misrepresentation or omission of fact (2) made by [the] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006); accord Bank of Am., N.A. v. Bear Stearns Asset Mgmt., 969 F. Supp. 2d 339, 351 (S.D.N.Y. 2013); Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (N.Y. 2009). Additionally, when bringing a fraud claim in federal court, these elements must be pleaded with the heightened particularity required by Rule 9(b). E.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015); see also Fed. R. Civ. P. 9(b) (" In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To meet this heightened standard, "the complaint must '(1) detail the

statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" Loreley, 797 F.3d at 171 (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

At the outset, Figueroa's Complaint fails to show the connection between Defendants' alleged fraud and the foreclosure on her home, running afoul of New York's materiality and causation requirements. Figueroa makes general allegations about things Defendants allegedly didn't tell her, such as her eligibility for loan modification under various government programs and that her loan would be serviced by a third party. Compl. ¶¶ 68–75. But nowhere does she explain how this led to the foreclosure of her mortgage, or how these misrepresentations were material in her decision to initially finance her home. Such a causal connection—both in inducing Figueroa to sign the mortgage and in causing the loss she ultimately complains of—is necessary to state a claim for fraud. E.g., Meyercord v. Curry, 832 N.Y.S.2d 29, 30–31 (App. Div. 2007); Water St. Leasehold LLC v. Deloitte & Touche LLP, 796 N.Y.S.2d 598, 599–600 (App. Div. 2005); see also Small v. Lorillard Tobacco Co., 720 N.E.2d 892, 898 (N.Y. 1999) ("[A]n act of deception, entirely independent or separate from any injury, is not sufficient to state a cause of action under a theory of fraudulent concealment.").

Furthermore, the Complaint does not allege facts that allow an inference of Defendants' fraudulent intent. Rule 12(b)(6) "requires assertions of facts supporting a plausible inference of fraud." Cohen v. S.A.C. Trading Corp., 711 F.3d 360 (2d Cir. 2013); see also Loreley, 797 F.3d at 171 ("[T]hough mental states may be pleaded 'generally,' Plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" (quoting Lerner v. Fleet Bank,

9

N.A., 459 F.3d 273, 290–91 (2d Cir. 2006))). The only allegations concerning HSBC's fraudulent intent are that "HSBC knew" the loan would be serviced by PHH, and that it "intended to induce Plaintiff on the misrepresentation by forcing her to make payments to a non-party to the Mortgage." Compl. ¶¶ 75, 77. These conclusory allegations cannot by themselves support an inference of fraudulent intent. The claims against MERS and PHH are even weaker: Figueroa makes no allegations concerning their involvement in the fraud at all, except that PHH was a party to the loan servicing agreement. Id. ¶ 74. For all of these reasons, Figueroa's fraudulent misrepresentation claim is dismissed.

### C. TILA Claim Against HSBC

In addition to her fraud claim, Figueroa alleges that HSBC violated the Truth in Lending Act by failing to provide required disclosures when she entered into the mortgage. Id. ¶¶ 37–42. Designed to increase transparency in loan provisions and to help consumers make informed decisions when taking on debt, TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998). Failure to provide the required disclosures can open a lender to civil liability, and may also be used as a defense in an action against the borrower to collect on the debt. Id.

While HSBC argues that Figueroa's TILA claim fails in substance and should be dismissed on the merits, they also assert that the claim must be dismissed as untimely. HSBC Mem. at 12–14. This is because claims for damages under TILA are limited to one year after the date of the alleged violations. Id. at 12 (citing 15 U.S.C. § 1640(e)). While Figueroa did not respond to HSBC's motion, in her Complaint, she claims that she first learned of the alleged

10

violation in February 2016, and thus, "[a]ny applicable statute of limitations should run from this date"—a principle known as the discovery rule. Compl. ¶ 42; see also Discovery Rule, Black's Law Dictionary (10th ed. 2014) (defining the discovery rule as "[t]he rule that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim").

Earlier this year, Judge D'Agostino explained TILA's statute of limitations in the mortgage context, including the inapplicability of the discovery rule:

> The statute of limitations for filing a private action for monetary damages under TILA is one year. Moreover, "it is well settled that, in the context of TILA claims, the 'discovery rule' that [P]laintiff[] urge[s] this Court to adopt is applied solely to claims arising from 'open-end' credit transactions, rather than . . . 'closed end' transactions." "A mortgage transaction—such as that at issue here—is a 'closed-end credit' transaction." Thus, . . . "the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs."

Kelmetis v. Fed. Nat'l Morg. Ass'n, No. 16-CV-246, 2017 WL 395120, at *6 (N.D.N.Y. Jan. 27, 2017) (first four alterations in original) (citations omitted) (first quoting Murphy v. Flagstar Bank, FSB, No. 10-CV-645, 2012 WL 2571250, at *2 n.1 (N.D.N.Y. July 3, 2012) (Kahn, J.); and then quoting McLean-Laprade v. HSBC, No. 12-CV-1774, 2013 WL 3930565, at *3 (N.D.N.Y. July 30, 2013) (Kahn, J.)).

Figueroa notes that the mortgage was executed in 2006, Compl. ¶ 15, and her Complaint in this case was filed over ten years later, Compl. This gap clearly exceeds the one-year limitations period established by TILA, and renders Figueroa's claim untimely. Accordingly, Figueroa's TILA claim against HSBC must be dismissed for failure to state a claim.

11

**D. RESPA Claims Against PHH**

Figueroa's remaining claims are based on PHH's alleged violations of the Real Estate Settlement Procedures Act. Id. ¶¶ 43–64. While both fall under RESPA, Figueroa makes two distinct claims against PHH: (1) that it accepted inappropriate charges in connection with "settlement services" performed for the mortgage, id. ¶¶ 44–45, and (2) that it failed to respond to a qualified written request for information as required by RESPA, id. ¶¶ 47–50. For the following reasons, both of these claims must be dismissed.

*1. Prohibition Against Unearned Fees*

Among other things, RESPA prohibits splitting and distributing fees "for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). This provision outlaws several forms of financial misconduct, such as where "[t]wo or more persons split a fee for settlement services, any portion of which is unearned." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 114 (2d Cir. 2007) (alteration in original) (quoting Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,059 (Oct. 18, 2001)), abrogated by Freeman v. Quicken Loans, Inc., 566 U.S. 624 (2012); see also Gorbaty v. Wells Fargo Bank, N.A., No. 10-CV-3291, 2012 WL 1372260, at *6 (E.D.N.Y. Apr. 18, 2012) (discussing the requirements to state a plausible claim under § 2607(b)).

Similar to Figueroa's TILA claim, her RESPA unearned-fees claim against PHH is time barred. Claims under § 2607 must be brought within one year "from the date of the occurrence of the violation." 12 U.S.C. § 1614. The date of the violation in a RESPA claim is the date that the allegedly unlawful payment was made, namely the closing date of the transaction. E.g., Garcia v.

Lasalle Bank NA, No. 16-CV-3485, 2017 WL 253070, at *6 (S.D.N.Y. Jan. 19, 2017); Gorbaty v. Wells Fargo Bank, N.A., No. 10-CV-3291, 2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014); accord Cunningham v. M&T Bank Corp., 814 F.3d 156, 160 (3d Cir. 2016); see also Gorbaty, 2014 WL 4742509, at *10 n.14 (noting the rejection of the discovery rule in RESPA claims by the "bulk of authority"); Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 487 n.16 (E.D. Pa. 2014) ("[C]ourts across the country have refused to apply the discovery rule to RESPA claims."). As noted above, Figueroa's mortgage was consummated in 2006. Compl. ¶ 15. The limitations period for her unearned-fees claim has long since passed, and so it must be dismissed.

   2. *QWR Requirements*

Under RESPA, loan servicers are also required to quickly respond to written requests for information concerning the accuracy of a borrower's account. 12 U.S.C. § 2605(e). When such a request meets the requirements of RESPA, it is called a qualified written request, or QWR. Id. If a servicer fails to respond to a QWR within thirty days (excluding weekends and holidays), it can be subject to civil liability. Id. § 2605(e)(2), (f).

Figueroa claims she submitted a QWR to PHH "on or about March 31, 2016," but that PHH did not acknowledge receipt of or substantively respond to the QWR within the time required. Compl. ¶¶ 47–49. In response, PHH provided the Court with what it claims to be the alleged QWR, though this letter is dated February 12, 2016. Dkt. No. 21-2 ("Exhibit B"). Relying on the letter, which it says the Court should consider as integral to the Complaint or as incorporated by reference, PHH Mem. at 5, PHH argues that the letter in question does not qualify as a QWR, id. at 12–13. This is both because the letter was sent to the wrong address, and because the letter does not indicate a belief that Figueroa's "account is in error." Id.

13

The Court does not need to consider the letter submitted by PHH or determine whether it is integral to the Complaint. This is because the Complaint itself does not sufficiently allege that Figueroa properly submitted a QWR.

"To plead a claim under the RESPA, [the] plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR or notice of error." Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015); see also, e.g., Miller v. HSBC Bank U.S.A., N.A., No. 13-CV-7500, 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015) (collecting cases). Here, the conclusory allegations in Figueroa's Complaint are almost identical to those dismissed in Kilgore. Compare Compl. ¶ 47 ("Plaintiff submitted a timely Qualified Written Request . . . on or about March 31, 2016."), with Kilgore, 89 F. Supp. 3d at 538 ("Plaintiff simply pleads conclusorily that he submitted a QWR/notice of error . . . . Such a non-specific allegation is insufficient to support a plausible claim under the RESPA."). Without more, the Court cannot determine whether the document mentioned in Figueroa's Complaint meets the legal definition of a QWR, and thus her Complaint fails to plausibly allege a violation of RESPA.

3. *Damages*

PHH also argues that Figueroa's QWR claim must be dismissed for failing to adequately allege damages. PHH Mem. at 14–15. RESPA allows two types of damages for violations related to QWRs: "any actual damages to the borrower as a result of the failure," and statutory damages awarded by the court. 12 U.S.C. § 2605(f)(1). Several courts have held that "proof of actual damages is mandatory to recover on a § 2605(e) violation, and . . . a § 2605(e) claim cannot stand

on statutory damages alone." Bonadio v. PHH Mortg. Corp., No. 12-CV-3421, 2014 WL 522784, at *5 (S.D.N.Y. Jan. 31, 2014) (quoting Selman v. CitiMortgage, Inc., No. 12-CV-441, 2013 WL 838193, at *9 n.10 (S.D. Ala. Mar. 5, 2013)); accord Kelmetis, 2017 WL 395120, at *8; Dolan v. Select Portfolio Servicing, No. 03-CV-3285, 2016 WL 4099109, at *5–6 (E.D.N.Y. Aug. 2, 2016). Additionally, statutory damages under RESPA are available only "in the case of a pattern or practice of noncompliance." Id. § 2605(f)(1)(B); see also, e.g., Sutton v. CitiMortgage, Inc., 16-CV-1778, 2017 WL 122989, at *7–8, *17 (S.D.N.Y. Jan. 12, 2017) (dismissing a RESPA claim for, among other things, failing to show a pattern or practice of violations); Reinhart v. Citimortgage, Inc., No. 15-CV-109, 2016 WL 1259413, at *4 (N.D.N.Y. Mar. 30, 2016) (same).

In this case, the only damages alleged by Figueroa in connection with her QWR are statutory. Compl. ¶¶ 56–58. While this alone may be enough to require dismissal, e.g., Bonadio, 2014 WL 522784, at *5, Figueroa has also failed to properly allege statutory damages. The Complaint does not include any facts suggesting a pattern or practice of PHH concerning responses to QWRs, Compl. ¶¶ 43–64, and thus, statutory damages under RESPA are unavailable, e.g., Roth v. CitiMortgage Inc., No. 12-CV-2446, 2013 WL 5205775, at *8 (E.D.N.Y. Sept. 11, 2013) (collecting cases). Since she has not alleged any permitted damages stemming from PHH's alleged failure to respond to her QWR, Figueroa's claim must be dismissed.

**E. Leave to Amend**

When a complaint is dismissed for the first time pursuant to Rule 12(b)(6), leave to amend before reviewing the proposed amended pleading should typically be withheld only if amendment would be futile—namely, if it is clear from the facts alleged that the events in

15

question cannot give rise to liability. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see also, e.g., In re Aluminum Warehousing Antitrust Litig., 833 F.3d 151, 163 (2d Cir. 2016) (discussing affirmance of dismissal without leave to amend due to futility); Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d. Cir. 2016) (noting that denial of leave to amend on futility grounds is subject to de novo review); Loreley, 797 F.3d at 191 (holding that, by not allowing plaintiffs to submit a new pleading attempting to correct any deficiencies, the district court "violated the liberal spirit of Rule 15" (quoting Williams v. Citigroup, Inc., 659 F.3d 208, 214 (2d Cir. 2011))). Otherwise, leave to amend should freely be given, especially when the plaintiff is appearing pro se. E.g., Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013); Pangburn v. Culbertson, 200 F.3d 65, 70–71 (2d Cir. 1999).

      Here, Figueroa's TILA claim against HSBC and her RESPA unearned fees claim against PHH are both dismissed without leave to amend. Since both of these claims are clearly time barred, any amendment attempting to replead them would be futile. Given Figueroa's status as a pro se litigant, however, the Court will permit her to seek amendment of her Complaint in all other respects. Any such motion to amend must be made within thirty (30) days from the date of this Memorandum-Decision and Order, must comply with the requirements for motions to amend in Local Rule 7.1(a)(4), and must address the deficiencies highlighted by the Court in her fraudulent misrepresentation and RESPA QWR claims if she wishes to pursue them further. Cf., e.g., Burrowes v. Combs, 124 F. App'x 70, 71 (2d Cir. 2005) (affirming the district court's dismissal without further leave to amend after a previous amendment was unsuccessful).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the HSBC Motion (Dkt. No. 9) and PHH Motion (Dkt. No. 20) are **GRANTED**; and it is further

**ORDERED**, that PHH's original motion to dismiss (Dkt. No. 15) and Defendants' Letter Motions (Dkt Nos. 25, 27) are **DENIED as moot**; and it is further

**ORDERED**, that Figueroa's Complaint (Dkt. No. 1) is **DISMISSED** for failure to state a claim; and it is further

**ORDERED**, that, if Figueroa wishes to further pursue her claims, she must—in accordance with Local Rule 7.1(a)(4) and within **thirty (30) days** from the date of this Memorandum-Decision and Order—move to amend her Complaint to address the deficiencies identified in this Memorandum-Decision and Order; and it is further

**ORDERED**, that, if Figueroa does not move to amend her Complaint within **thirty (30) days** from the date of this Memorandum-Decision and Order, the Clerk of the Court shall close this case without further order of the Court; and it is further

**ORDERED**, that the Clerk shall serve copies of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 29, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge